WARING v. ROBINSON, WARING, SMITH, AND MILLER.

IN the year 1836, Smith, Robinson, and Waring the defendant,
were partners. Smith filed a bill stating a dissolution, pray-
ing an account, an injunction and receiver. A receiver was ac-
cordingly appointed in May of that year; but after an order to
answer, no further proceedings were taken. In 1839, the com-
plainant commenced a suit by declaration against the firm.
No process was issued, or declaration served upon either of the
partners except Robinson, who gave a cognovit, on which judg-
ment was entered up. The receiver stated that a large amount
of claims had been presented to him. The complainant· filed
the usual bill upon a return of his execution, making the receiver
a party, stating the filing of the bill by the partner, and the ap-
pointment.

*Held,* that the appointment of a receiver in a suit for an account
and dissolution, or stating a prior dissolution, prevents one part-
ner giving any preference among the creditors; although it ap-
pears that a mere injunction would not be sufficient.

*Held also,* that such appointment does not prevent a creditor ob-
taining a preference by adverse proceedings.

Prior to the statute of 1833, a confession by one partner served,
without service of process upon the others, would only have bound
the one at law. Since the act, the judgment and execution bind
the joint property at law. But *held,* that the appointment of a
receiver in a suit for the winding up of the affairs of a firm, is
equivalent to an assignment in this court, whether followed by
an actual assignment or not, and arrests the right to prefer.

Although it is in the power of the partner who has filed such a bill
to dismiss it at any time before decree, and probably discharge
the receiver—yet until he does so, it must be treated as an equi-
table assignment by him of all the property, for all the creditors.

THE bill in this cause was to obtain payment of a judg-
ment debt, out of funds in the hands of a receiver, after
execution return unsatisfied.

In the year 1836, the above named defendants, except
Miller, were partners in trade. In May of that year,
Smith filed a bill against his co-partners ; alleging certain
acts of misconduct, stating a dissolution to have been
made by consent, and praying an account, an injunction,
and a receiver. An injunction was issued, and on the 3d

of May in that year, the defendant Miller was appointed a receiver. The order directed a reference to a master, to make such appointment, and that the defendants should be examined touching the partnership property, and should assign all the same, as well as all books, &c., of the firm. The report of the master was confirmed, but whether an assignment was made, does not appear. An appearance having been obtained, an order to answer was entered; but no further proceedings were taken in the suit.

In November, 1839, the complainant commenced a suit by declaration against the firm, upon a partnership debt. No process was issued, or declaration served upon either of the partners, except the defendant Robinson. He being served, gave a cognovit, on which the judgment was entered. A large number of creditors have exhibited their demands to the receiver, greatly exceeding the amount of the monies in his hands. The complainant having had his execution returned unsatisfied, claims in this bill payment in preference to all other creditors.

*Mr. Greenwood* and *Mr. Waring*, for the complainant.

*Mr. Greene*, for the receiver, the defendant Miller.

THE ASSISTANT VICE-CHANCELLOR:—This case involves a principle of considerable importance, viz., how far a partner, after a bill has been filed for a dissolution, an injunction issued restraining his intermeddling with the property, and a receiver obtained, may give a cognovit in a suit against the firm, and whether the judgment obtained shall have a priority against the assets of the firm.

In the case of *Pratt* v. *Robinson*, July, 1839, I decided that a judgment obtained adversely against the partners, was entitled to such priority. The reasons for that decision will appear in the present opinion.

It is well settled that one partner cannot, by bond and warrant, confess a voluntary judgment so as to bind another. The bond is an extinguishment of the partnership debt. (*Green* v. *Beals*, 2 *Caines*, 254. *Crane* v.

*French*, 1 *Wendell*, 312.) In the case cited, however, the Chief Justice says, that had French (the joint debtor who gave a confession) been actually brought into court by a regular service of process against him and his part- ner, he was of opinion that he might have confessed a judgment which would have bound the joint property. French, there, had endorsed his appearance on the *capias* after the return day. In *Grazebrook* v. *McCreedie*, (9 *Wendell*, 439,) a suit had been commenced by declara- tion, which was served upon Senior, one of the partners, but not upon McCreedie. The former admitted service, and authorized an attorney to give a cognovit. The Chief Justice, after stating that if the suit had been commenced by a *capias* against all the partners, and served upon one, the plaintiff might, by virtue of the statute, proceed against all ; and noticing the case of *Wakeman* v. *French*, ob- serves : " Here, declarations were served on one partner, " and service admitted by him to be good. In neither case " was there a suit in fact regularly commenced. Had Senior, " in this case, confessed a judgment in person by cognovit, " signed by himself, the case would have been precisely " similar in principle to that of *Wakeman* v. *French ;* it " would have been a voluntary confession by one partner, " and valid as to him, but void as to his partner."

This case was decided in October, 1832. In the session of 1833, an act was passed, providing, that where an ac- tion against two or more persons, upon any joint obligation or contract, shall be commenced by filing a declaration, and it is served upon either, the judgment shall be against all the defendants, in the same manner as if all had been served with such declaration ; which judgment shall have the like effect, and execution thereon shall be issued, as if process against such defendants had been served on one of them. Under this act the case of *Pardee* v. *Haynes*, (10 *Wendell*, 630,) was decided, in which it was held, that where a suit was commenced against joint debtors by de- claration, and it is served upon one, he may confess judg- ment, and bind the joint property of all the defendants, in

the same manner as if he had been served with process. See also *St. John* v. *Holmes*, (20 *Wendell*, 609.)

· The fourth section of the statute, (2 *R. S.* 378,) enables the plaintiff to levy his execution out of the personal property of the defendant not served with process or declaration, owned by him as a partner with the other defendants served, or with any of them.

It is, then, clear, that the judgment and execution were perfectly valid to bind at law the joint property of the partners. But this cognovit was given by Robinson, and judgment obtained after Smith, one of the partners, had filed his bill in this court against Robinson and Waring his co-partners, stating a dissolution, and praying an account. Robinson was enjoined in that suit from collecting, receiving, selling, transferring, or in any way using or disposing of any goods, debts, property or effects belonging to the firm. As to the injunction, it is, however, only necessary to refer to the case of *McCreedie* v. *Senior*, (4 *Paige*, 380,) to show that the confession of the judgment was not a violation of the injunction.

Next, it is urged, that the filing of the bill, and appointment of a receiver, was a dissolution of the partnership, and that this precludes one partner from giving such a preference to a creditor in case of an insolvency. This point requires a careful examination.

In *Law* v. *Ford*, (2 *Paige*, 310,) the chancellor held, that where either party had a right to dissolve the partnership, and the agreement between them made no provision for closing up the concern, it was of course to appoint a receiver upon a bill filed for that purpose. That in such case the court would direct the receiver to apply the partnership property to the payment of all the debts of the firm rateably, without giving a preference to the favorite creditor of either party.

In *Egbert* v. *Wood*, (3 *Paige*, 521,) the chancellor says, that, although by the law merchant, the effects of a partnership upon the insolvency of a firm, were in equity considered a trust fund for the payment of partnership debts, and any of the partners might apply to this court

for the purpose of having the funds thus appropriated rateably among all the creditors, yet either of the partners before the dissolution, or all of them afterwards might appropriate the funds in payment of one creditor in preference to another.

In *McCreedie* v. *Senior*, (11 *Paige*, 378,) a bill was filed by one partner alleging a violation of the partnership articles, by applying the effects of the firm to their private transactions, and seeking a dissolution of the partnership, an injunction, and receiver. After service of the injunction, one of the partners confessed a judgment to a partnership creditor. The injunction prohibited him from intermeddling with the property and effects. The chancellor held that the injunction did not prohibit the partner from giving a preference to a *bona fide* creditor of the firm, and that the facts stated in the bill did not entitle the complainant to an injunction to restrain the creditors of the firm from proceeding at law to recover their just debts, or to restrain any member of the firm from confessing a judgment to such creditors, so as to give them a preference in payment.

It is undeniable that the authority of each partner over unclosed matters continues after the dissolution. A payment made to one, or any arrangement for a settlement, binds all. (*Combs* v. *Boswell*, 1 *Dana's Rep.* 478. *Pritchard* v. *Draper*, 1 *Tamlyn's Rep*, 332. *Ault* v. *Goodrich*, 4 *Russell*, 430.) But where a partnership was dissolved and a receiver appointed, notice of which was published in the gazette which circulated in the town where the defendant lived, payment of a debt to one of the partners was held void if notice of the appointment of the receiver could be brought home to the debtor. (*Manning* v. *Bricknell*, 2 *Hayward*, 133.)

It is true, the appointment of a receiver in a cause, when a bill is filed for a dissolution, is not a dissolution. The authorities showing that the court will not appoint a receiver, unless it can clearly see that at the hearing a dissolution must be decreed, prove this. The receiver is appointed upon the anticipation that a dissolution must

thereafter take place. That implies that a dissolution is not then made. ( *Whitcomb* v. *Goodman*, 1 *Jacob & Walker*, 569. *Chapman* v. *Beach, ibid,* 573. *Henn* v. *Walsh,* 2 *Edwards,* 130. See also *Harding* v. *Glover,* 18 *Vesey,* 281.) But if there has been a dissolution the case is different.

A consideration of great weight upon the subject is this— until a decree upon a partner's bill, the suit is wholly within the control of the parties. The complainant may dismiss his bill when he chooses. But a decree pronouncing a dissolution assumes the control of the assets, and provides for calling in the creditors and ascertaining their demands. (*Davies* v. *Boyle, Seaton's Decrees,* 240.) Any creditor could avail himself of it, and beyond a doubt after a creditor had come in, the control of the parties would be lost. Prior to the decree, by analogy to a suit for the administration of assets of a deceased person, no creditor could be restrained from proceeding at law. (*Clarke* v. *Earl of Ormond, Jacob's Rep.* 122. *Wilson* v. *Wetherherd,* 2 *Merivale,* 406.) After a decree he could be enjoined, because then a mode is opened to him for recovering his demands. And the law is well settled, that a decree for the administration of assets prevents an executor from doing any thing which will affect the relative rights of the creditors, though he is not restricted prior to it. (*Shewen* v. *Vanderhost,* 2 *Russell & Mylne,* 75. 1 *ibid,* 348. *Handford* v. *Storie,* 2 *S. & S.* 198.) He will be responsible, if after such a decree he permits judgments to be obtained, and does not apply for an injunction. If property is taken under an execution, the executor cannot charge it to the estate, and the creditor who takes the property with full notice of the decree may be compelled to restore it. (*Clarke* v. *The Earl of Ormond, Jacob's Rep.* 122.)

There are some cases in Ireland which bear upon this point and deserve attention. In *Murrough* v. *French,* (2 *Molloy,* 497, August, 1827,) the master of the rolls held, that if there are prior creditors parties in a cause, having claim on an estate, and the court, by appointing

a receiver, interferes with their rights, though the plaintiff may dismiss his bill, yet the court will protect the rights of such creditors, parties in the cause, by continuing the receiver, putting the persons so protected under terms to file a bill forthwith. The case of *Largan* v. *Bowen*, (1 *Sch. & Lefroy*, 296,) should be carefully examined; because Lord Chancellor Hart has, in effect, overruled it, though professing to distinguish it from the case before him. (*White* v. *Westmeath*, 2 *Molloy*, 131. 1 *Beatty*, 180.) It was the case of a bill for the plaintiff, and for such creditors and legatees as should come in. In the progress of the suit, Duran, a mortgagee, was made a defendant. A receiver had been appointed who had got rents in hand. The plaintiff made an arrangement with the principal defendant to dismiss the bill, by which it was supposed the rents would go to the tenants for life, and not be applied to the interest upon the incumbrances. Lord Chancellor Hart, in *White* v. *Westmeath*, after showing that the case before him was distinguishable, be-: cause the plaintiff did not profess to act for the other creditors, but had framed his bill to shut them out, expresses himself strongly against the authority of the case; concluding his criticisms with saying, it was not an authority by which he should be governed.

To these authorities it appears to me a sufficient answer. that Smith still continued his bill in court; plainly indicating that his intention as to the disposition of the property remained unchanged.

The bill by Smith stated that a dissolution had actually taken place on the first of May preceding its being filed. And it called for an account, an injunction and receiver, upon various grounds of misconduct of the other partners. I consider it therefore perfectly clear that no creditor was prevented by the bill of Smith from proceeding at law against the partners, and obtaining an adverse judgment, which if followed up by a creditor's bill in this court would give him a preference.

But the right of a co-partner to give a confession of a judgment appears to me not established.

1840.

Waring
v.
Robinson and
others.

In this case, I conclude that the complainant knew of the appointment of the receiver, before he obtained his judgment. It is stated in the answer, that the receiver advertised for creditors of the firm to come in and present their claims; that a large number of claims were exhibited to him, among which is the demand of the complainant. It is also stated that these claims were presented before the judgment was obtained.

Again, it is stated in the answer, that the firm was actually dissolved, and notice published in the Courier and Enquirer, and other papers. The receiver has neglected to prove this fact, and his answer is not responsive. But the bill of Smith contained an allegation, that the dissolution had taken place by consent, and I consider that when he knew of the appointment of a receiver, he is chargeable with notice of the allegations in the bill, under which the appointment was made. This, however, only shows that he knew it was alleged there had been a dissolution, not that the fact is now proven against him.

Again, the firm was at the time of his judgment actually insolvent, and the exhibition of the numerous claims to the receiver, contrasted with the funds in hand, plainly showed this. The complainant is chargeable with notice of this fact.

We have then the case of a bill for an account and the closing up of the concerns, filed by one partner against the others; of an injunction and of a receiver being appointed; of knowledge by the complainant of all these facts. With this information, and three years after the appointment, he gets the confession of judgment. I conclude that he cannot avail himself of it; that the co-partner was not then competent to give him a preference.

There is another rule of law bearing upon the question. An assignment by one partner of his share in the property operates as a dissolution of the firm. The remaining partners may have no confidence in the assignee. Nor may the assignee choose to be concerned in the trade. (*Griswold* v. *Waddington,* 15 *Johns. Rep.* 82. *Marquand* v. *Manufacturing Co.,* 17 *Johns.* 535. *Buford* v. *Neely,*

2 *Dev. Eq. Rep.* 483.) Now the bill and appointment of a receiver on the application of Smith, is in equity equivalent to an actual assignment of the property, so far as he could assign it. It is immaterial whether an assignment was made or not. There is a clear equitable transfer of all the rights of one partner in the fund, and of all the other partner's rights, so far as he could affect them. A partner who files a bill and gets a receiver elects, and demonstrates an intention, to put the control of his funds out of his own power. Whatever may be the effect as to the authority of his co-partners, it is as to himself clear, that all dominion over the property is voluntarily surrendered. This meets the argument of counsel, that the assent of Smith to this claim is to be implied from his allowing the present bill to be taken as confessed. Smith had no right to assent or dissent, while his bill remained in court, and a receiver was in possession.

Now, as I view it, the cognovit given by the one partner, amounted to the same thing as the receiver procured by the other, except that in the one instance a preference is sought to be given—in the other equality to be observed. And in the latter case, the partner has done all that this court holds essential, to give effect to his intention.

The case of *Williamson* v. *Wilson*, (*Bland's Rep.* 418,) deserves much attention. The chancellor there held, that insolvency of a firm operated as a dissolution of itself; that upon a bill being filed stating such insolvency and misappropriation by another partner of the assets, a receiver would be appointed. He held, that when a person was insolvent, equity required that he should make an equal distribution of his effects among all the creditors. And that where this court is called upon to administer the funds, it will do it upon that principle. Still, if a creditor can fairly and legally obtain full payment from his insolvent debtor, equity will not deprive him of the advantage.

Upon the case before him, he said that none of the creditors appeared to have yet obtained any legal advantage. It was therefore proper that the court should lay hands

on the joint property, and let all its creditors come in *pari passa*, and according as their respective priorities, if any shall appear.

The defendants in the case had answered, and exceptions were allowed. Pending these, the plaintiff presented a petition for distribution of the funds among the creditors, and certain creditors presented petitions also for the same purpose. It was held that the suit was to be considered as a creditor's suit, and the creditor's were to be allowed to come in as parties. All others to be called in by public notice in the usual form.

This case, it should be observed, does not decide that a creditor might not have got an advantage by prosecuting to judgment, previous to the order for the creditors to come in and have distribution. That order was equivalent to a decree for distribution in an ordinary suit. And the chancellor adverts to the very analogy which I have before relied upon between a case of a bill by a partner, and a suit for distribution of assets of a deceased person.

It certainly weighs upon me much, that the analogy which I have pointed out ought to be observed throughout; and as an executor after suit may give a preference, so may a partner. But it is to be observed, that the permission to an executor is in violation of a favorite maxim of the court, that equality is equity, and has been disapproved of by eminent judges. Sir John Leach, in *Maltby* v. *Russell*, (2 *S. & St.* 228,) expressed himself against the doctrine, but found the authorities too decisive upon the point. In *Parker* v. *Dee*, (2 *Ch. Cas.* 200,) the master of the rolls held, that neither voluntary payments nor judgments confessed of debts of equal degree with the complainants, were to be allowed after bill filed : and in *Surrey* v. *Smalley*, (1 *Vernon*, 457,) Lord Chancellor Jeffries made a similar decision. See the other cases, Hoffman's Master in Chancery, p. 193, 197.

Add to this that in the cases relating to an executor, there has been neither an injunction nor receiver, and we find sufficient reason for the distinction I have taken.

It was the duty of Smith to have prosecuted his suit to

a decree. No further steps were taken after the order for the appointment of a receiver, and the order confirming the master's report of appointment.

The bill of complaint must be dismissed, but without costs. It will be the duty of the receiver to apprize the creditors of the state of the fund. And the complainant Smith ought to proceed to take his bill as confessed and get a decree, declaring the dissolution, insolvency, account if he wishes it, and a distribution of the funds in the hands of the receiver. If that is not done, the receiver should apply alone, or in conjunction with creditors, for directions.