DIANE MAZUR ET AL. *v.* MICHAEL
SCAVONE ET UX.

[No. 1167, September Term, 1976.]

*Decided November 9, 1977.*

696

The cause was argued before MOYLAN, ■ POWERS and MOORE, JJ.

*Jay M. Caplan*, with whom was *Erwin B. Frenkil* on the brief, for appellants.

*James K. Carmody*, with whom were *Serio, Carmody & Nichols* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Diane Mazur, infant, through her parents and next friends, sued the appellees, Michael and Roberta Scavone, for personal injuries sustained when Diane was attacked and bitten on the face by a German Shepherd dog owned by the appellees. After extensive discovery by both sides, the appellees filed a Motion In Limine and a Motion for Summary Judgment to which the appellants filed timely answers. Following a hearing on the motions, Judge Morris Turk, in the Circuit Court for Anne Arundel Couny, granted the appellees' Motion for Summary Judgment. Although the judgment appealed from was the granting of the motion, the ultimate issue involves not the law as to summary judgments but the law of evidence and the propriety of granting the Motion In Limine.

The gross facts, as set out in the pleadings, are not in dispute. On January 25, 1971, Diane Mazur, then ten years of age, was selling Girl Scout cookies in her neighborhood.

She went to the home of the Scavones. After ringing the doorbell, she was invited inside by the Scavones' adult daughter, Deborah. Deborah agreed to order cookies from Diane. As Deborah was signing the order form, the German Shepherd came running down the steps and jumped on Diane. Standing on his hind legs, with his paws on her shoulders, he bit Diane on her face. Diane ran screaming from the house. Deborah followed her. After seeing the bite on her face, Deborah ran back into the Scavones' house to get her car keys. Deborah then drove Diane to the Mazur home, located about two blocks away. She subsequently drove Diane and Diane's mother, Helen Mazur, to the hospital where Diane was treated. Diane sustained a severe cut on her face.

The law as to summary judgments is not in dispute. Maryland Rule 610 d provides, in pertinent part:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Neither is the tort law in dispute. Both parties agree, as indeed they must, that to hold liable the owner of a domestic animal that has caused injury, the claimant must show that the owner knew, or by the exercise of ordinary and reasonable care should have known, of the inclination or propensity of the animal to do the particular mischief that caused harm. *Twigg v. Ryland,* 62 Md. 380; *Finneran v. Wood,* 249 Md. 643, 648, 241 A. 2d 579, 581. The pivotal issue in this case is that of whether the appellees knew, or should have known, of an inclination on the part of their German Shepherd to bite people. If the pleadings and supporting documents gave no promise of establishing this element, the Motion for Summary Judgment was properly granted; if the pleadings and supporting documents did show the possibility of establishing this element, the motion was improperly granted.

698

The question boiled down to one of whether there was any evidence being proffered by the appellants to show such knowledge. In their Answers to Interrogatories, the appellees denied any vicious propensities on the part of their German Shepherd and any knowledge thereof. This denial was repeated in the deposition of appellee Michael Scavone and in that of his daughter, Deborah, who was not a party defendant. The question became that of whether the appellants could show evidence of such knowledge on the part of the appellees. The first indication of ostensible evidence in this regard came in an Answer filed by the appellants to Supplemental Interrogatories. One of those answers contained the following statement:

"The Defendant's daughter stated in the Plaintiff's car on the way to the hospital that the dog got excited and nervous around strangers and that they would have to get rid of the dog now because he had previously jumped others."

The appellees, with a supporting affidavit by Deborah Scavone, denied that such a statement had ever been made but further pointed out, which point was not contested, that a period of some twenty-five minutes had elapsed between the biting incident and the final automobile trip to the hospital, in the course of which the disputed declaration was allegedly made. In their Motion In Limine, the appellees urged the court to rule that the alleged declaration, even if assumed to have been made, was inadmissible on the grounds that it was hearsay and did not fall within any recognized exception to the hearsay rule. Judge Turk did so rule that the alleged declaration was inadmissible in evidence under the hearsay rule. On the basis of that ruling, he granted the appellees' Motion for Summary Judgment.

Our starting point of analysis is a consideration of what is required of a party to forestall a summary judgment against him. The analysis of Judge Powers in *Knisley v. Keller*, 11 Md. App. 269, 272-273, 273 A. 2d 624, is highly instructive:

"We point out that the summary judgment procedure is not a substitute for a trial but merely

a hearing to decide whether a trial is necessary, *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956), page 100; *Lipscomb v. Hess,* 255 Md. 109, 257 A. 2d 178 (1969), page 118. The party opposing the motion must show by facts, which would be admissible in evidence, that there is real dispute between the parties. The dispute must be material to the outcome. . . . The function of the judge is much the same as that he performs at the close of all the evidence in a jury trial when motions for directed verdict or requests for peremptory instructions require him to determine whether an issue requires resolution by a jury, or is to be decided by the court as a matter of law."

The appellants urge upon us that there was a genuine dispute — a genuine controversy — over a material fact, that fact being whether Deborah Scavone ever made the out-of-court declaration attributed to her or not. In her affidavit, Deborah Scavone swore:

"After the incident, I followed Diane outside and noted her injury. I then went back into the house, got my shoes and drove her to her home. After a discussion with her mother and a waiting interval of about twenty minutes, I drove Diane and her mother to the hospital.

At no time on that date, or at any other time, did I say that my parents' dog got excited around strangers or that he had previously jumped on anyone. The fact is that the dog was gentle and had never attacked, bothered or threatened anyone prior to January 25, 1971."

In stark contrast to that, the appellee Helen Mazur, in her answering affidavit, swore:

"After Diane was bitten by the dog, she was brought to my house by Deborah Scavone. Deborah knocked on the door and told me what had

happened to Diane. I ran out to the car to look at her and then went back in the house to get a washcloth. I yelled to my son to call my husband and went out to Deborah's car. It is only a few minutes to my house from the Scavone's. Deborah Scavone did not come in my house at all.

After we were in the car a few minutes, Deborah said that they would have to get rid of the dog now because he had previously jumped someone else."

There can be no doubt but that this is a genuine dispute as to a fact. The pivotal question, however, is that of whether this genuine dispute of fact is or is not a dispute *as to a material fact*. This depends upon the correctness and the propriety of the judge's evidentiary ruling which he made in granting the appellees' Motion In Limine. If the alleged out-of-court declaration is admissible, the dispute as to whether it was made is highly material. The resolution of the disputed question of whether Deborah Scavone did or did not make such a statement is tantamount to the resolution of whether the appellees were or were not aware of dangerous propensities in their dog. If, on the other hand, the alleged declaration is inadmissible in evidence, even assuming it to have been made, the dispute takes on a hollow ring and is bereft of all materiality. *Benedetto v. Balto. Gas & Elec. Co.*, 30 Md. App. 171, 175, 350 A. 2d 712. An inadmissible statement is the quantitative equivalent of no statement at all. The appellants will have failed to offer evidence which could establish a necessary element of their case and will be properly vulnerable to a motion for summary judgment. If properly excludible, even if made, it makes no difference to the outcome whether such declaration was or was not made. As Judge Powers carefully pointed out in *Knisley v. Keller, supra,* at 11 Md. App. 272:

"The party opposing the motion must show by facts, *which would be admissible in evidence,* that there is real dispute between the parties." (Emphasis supplied)

The ultimate issue for present purposes, therefore, becomes that of the propriety of the judge's evidentiary ruling. There is no disputing that the ostensible out-of-court declaration made by Deborah Scavone was hearsay and, *ceteris paribus*, inadmissible because not subject to cross-examination and the other trustworthiness conditioning devices. It cannot be urged that the declaration was an exception to the hearsay rule as an admission by a party for the reason that Deborah Scavone was not a party defendant. The only arguable theory of admissibility is that the declaration was an "excited utterance" and, for that reason, an exception to the rule forbidding hearsay evidence.

The excited utterance exception to the hearsay rule is well recognized in Maryland. As we pointed out in *Moore v. State*, 26 Md. App. 556, 562-563, 338 A. 2d 344:

"The circumstantial probability of trustworthiness underlying this exception (as well as the superior quality of the evidence) has been thoroughly explored and well set out by the recognized authorities in this field. Dean Wigmore said at § 1747, 'General Principle of the Exception':

'This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at

least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.' "

See also *Jackson v. State*, 31 Md. App. 332, 356 A. 2d 299, and *Estep v. State*, 14 Md. App. 53, 286 A. 2d 187.

The question of whether the out-of-court declaration being proffered by the appellants in this case was admissible in evidence (so as to foreclose the granting of the summary judgment) was not one that could be ruled upon as a matter of law. It required an element of fact-finding — not the finding of the ultimate facts, such as a jury engages in, but nonetheless a necessary finding of a subsidiary fact by the court in order to make a ruling on admissibility. The disputed fact in this case, though a fact for the judge alone and not for a jury, was whether this particular out-of-court declaration in the circumstances under which it was made was in fact excited, and therefore admissible, or unexcited, and therefore inadmissible.

The reason that such a disputed evidentiary question cannot be decided as a matter of law is that the existence of a state of excitement (or, on the other hand, the existence of a state of calm) is not an automatic function of a dramatic event diminished by the passage of a specified period of time between the event and its narration. It is rather a very personal, individual and subjective psychic phenomenon. The same event may have different impacts upon different observers. One cannot, therefore, say, as a matter of law, that Deborah Scavone made the declaration attributed to her in a state of spontaneous excitement; neither may one say, as a matter of law, that she made the declaration attributed to her in a state of unexcited calm. In resolving that question, which might in the trial forum go either way in the judge's discretion, testimony from a witness who heard the declaration could be very helpful; cross-examination as to the manner, actions and tone of the

declarant could be probing; the judge himself might seek out revealing psychological details not elicited by either direct or cross-examination.

Since the critical evidentiary decision on which all else hinges is one that in a trial could be resolved either way, the issue before us becomes one of whether a question of this type should be resolved by the judge in anticipation of trial or should await resolution in a trial setting. We hold that a question such as this, which cannot be settled purely as a matter of law, should not be decided in anticipation of trial. The fact that the unresolved factual question is a subsidiary one which will ultimately be handled by the judge alone as a necessary preliminary to making an evidentiary ruling as opposed to being a question of ultimate fact for a jury does not erode the logic of our holding. It is no more appropriate for a judge to settle discretionary evidentiary or other procedural questions in anticipation of trial than it would be for him to assess credibilities and make rulings of ultimate fact in anticipation of trial in cases where he is to be the ultimate fact finder instead of a jury. The law is clear that the summary judgment procedure is not a substitute for a trial but only a procedure to decide whether a trial is unnecessary as a matter of law. *Kirsner v. Fleischmann,* 261 Md. 164, 274 A. 2d 339; *Horst v. Kraft,* 247 Md. 455, 231 A. 2d 674; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563; *Pullman Co. v. Ray,* 201 Md. 268, 94 A. 2d 266.

The argument of the appellees to the effect that there is no factual contest as to the circumstances under which the disputed out-of-court declaration was made (for the reason that the other party denies the making of the declaration in toto and, therefore, cannot dispute its attendant circumstances) is of no consequence. Although there may be no dispute as to the first-level facts of where and when the words of the declaration were spoken, there is more than one permissible inference that may be drawn from those first-level facts — 1) the words were spoken in a state of excitement or 2) the words were spoken in a state of calm. Even though the fact to be inferred in this evidentiary

setting is one for the court alone and not for a jury, we find the reasoning of Chief Judge Brune in *Roland v. Lloyd E. Mitchell, Inc.*, 221 Md. 11, 14, 155 A. 2d 691, highly persuasive:

> "Furthermore, in a summary judgment proceeding, even though the underlying facts may have been undisputed, if they were susceptible of more than one inference, the party against whom inferences were sought to be drawn . . . was entitled to the inferences most favorable to his contentions. *White v. Friel*, 210 Md. 274, 123 A. 2d 303, and cases therein cited."

See also *McDonald v. Burgess*, 254 Md. 452, 255 A. 2d 299; *Fenwick Motor Co. v. Fenwick*, 258 Md. 134, 139-140, 265 A. 2d 256.

In determining whether a summary judgment should be granted, all disputed facts and inferences therefrom (including those of a subsidiary, evidentiary variety which will be resolved by the court alone) should, at that stage of the proceedings, be viewed in the light most favorable to the party against whom the motion is made. As Judge Singley pointed out in *Lipscomb v. Hess*, 255 Md. 109, 118, 257 A. 2d 178:

> "The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary . . . when there is no genuine controversy . . . . The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. . . . If facts are susceptible of more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made . . . and in the light least favorable to the movant . . . ." (Citations omitted)

Against this bench mark, the inference that must be drawn for summary judgment purposes in the present case

is that the declaration attributed to Deborah Scavone was made in a state of spontaneous excitement; was, therefore, a legitimate exception to the hearsay rule; and was, therefore, admissible evidence [1] establishing a genuine factual dispute as to a material issue. The summary judgment should not have been granted.

> *Judgment reversed; case remanded for trial; costs to be paid by appellees.*

---

1. This is not to suggest that the ultimate decision as to spontaneity and admissibility must, as a matter of law, be settled this way in the trial setting. At that stage, the decision as to the reception of evidence will be made by the trial judge, on the basis of the evidence then available to him, in the exercise of his discretion.